# CLAUDE SMITH BAILEY v. KARL S. HENDRICKSON.

## (143 N. W. 134.)

**Mortgagee — attorneys for — foreclosure by advertisement — written bid — sheriff — authority.**

1. A direction in writing, by the attorneys for a mortgagee to the sheriff, to bid a specified amount for the premises on a foreclosure by advertisement, construed and *held*, to be, in legal effect, a written bid for the amount stated, authorizing the sheriff to strike it off to the mortgagee if no one bid a greater sum.

**Foreclosure sale — amount bid — inadequacy — sale — fraud — undue advantage — prejudice.**

2. Mere inadequacy of price at a foreclosure sale is not a ground on which to set aside a foreclosure, in the absence of fraud, undue advantage, or prejudice. Grove v. Great Northern Loan Co. 17 N. D. 352.

**Mortgagee — foreclosure — second mortgage — bidder — amount — adequacy — security.**

3. Where the mortgagee, at a sale under a foreclosure of a second mortgage by advertisement, bids the amount due upon his mortgage, with costs of foreclosure, and is the highest bidder, the amount so bid cannot be held an inadequate price under the circumstances; and the adequacy or inadequacy of the price is not measured by exactly the same considerations that would determine the question were it at a public auction for other purposes, as it cannot be assumed that the law contemplates that a mortgagee, to protect his debt and security, must advance, under such circumstances, an amount perhaps several times the debt, for the protection of the small sum secured. To hold that he must do so would, in many cases, impose a burden upon him which would render his security valueless.

**Foreclosure by advertisement — notice — bidders — opportunity — public — legal sale.**

4. The presence and participation of more than one bidder at a foreclosure sale by advertisement, when proper and legal notice has been given thereof, is not necessary to a legal sale. It is sufficient if the public has been fully advised of the sale by legal publication of notice, and has the right and opportunity to attend and bid.

**Newspaper — qualifications — legal notices — circulation — advertisement.**

5. Section 2279, Rev. Codes of 1905, prescribes the qualifications that a newspaper must possess to entitle it to publish legal notices, and it is not for the court, in the absence of fraud, to overturn the legislative judgment on the subject and set aside a foreclosure sale, where the advertisement was published in a

newspaper qualified under said section, because it may not have had as great a circulation in the vicinity of the land as some other paper published in the county.

**Mortgagor — foreclosure — publication of notice — knowledge — actual — fraud — bad faith — process — personal service.**

6. The mortgagor, on foreclosure of a mortgage by advertisement under a power of sale, the advertisement being published in a newspaper published in the county in which the land is situated, and qualified under the provisions of § 2279, Rev. Codes of 1905, to publish legal notices, is charged with knowledge of the foreclosure proceedings; and the fact that he has no actual knowledge thereof is not, under ordinary circumstances, evidence of fraud or bad faith; and the notice so published has the same binding force that a foreclosure by action has when the defendants therein are personally served with process. Grove v. Great Northern Loan Co. supra.

**Mortgage — power of sale — number of publications — sufficiency.**

7. Six publications in six successive weeks, the last publication being the day before the sale, in a foreclosure under power of sale contained in the mortgage, fills the requirements of § 7459, Rev. Codes of 1905, which requires that notice be given by publication six times, once in each week for six successive weeks.

**Foreclosure — interest payment — first mortgage — mortgagor — knowledge — redemption — taxes.**

8. The fact that the mortgagor paid interest on a first mortgage after the institution of foreclosure proceedings under a second mortgage, and that the mortgagee so foreclosing did not ascertain that fact and prevent his doing so; and the further fact that the mortgagor paid taxes on the premises after commencement of foreclosure proceedings,—is not a reason for vacating the sale, and particularly when it is not shown that the mortgagee had knowledge of these facts, and when, if known, he had a right to assume that the mortgagor, who had full knowledge of the second mortgage, was intending to pay or redeem from it.

**Mortgagee — redemption — rent — bad faith — fraud.**

9. In the absence of proof that the mortgagee knew that the mortgaged premises were cultivated or rented during the year of redemption, the fact that he did not collect the rent due from the tenant during such period, and that the same was paid by the tenant to the mortgagor and retained by him, is not evidence of bad faith or fraud on the part of the mortgagee, in the conduct of his foreclosure proceedings.

**Mortgage — assignment — record — foreclosure — mortgagor — payment of debt.**

10. The fact that the party who owned and foreclosed a mortgage held it under an assignment which he did not place of record until some months after

taking it, but did record it some time prior to the commencement of foreclosure proceedings under the power of sale, in the absence of other circumstances, does not show fraud or lack of good faith on his part, particularly when it appears that the mortgagor never attempted to pay the debt, and proceeded in total disregard of the mortgage, and was in no manner prejudiced by the failure to record the assignment.

**Mortgage — foreclosure — premises — distinct tract — sale — bidders.**

11. Where mortgaged premises consist of a quarter section constituting one distinct farm or tract, it is not necessary to a valid foreclosure sale under a power that less than the whole tract be sold, particularly where it was first offered in tracts of 40 acres each, then in tracts of 80 acres each, without bidders.

**Notice of foreclosure — name of holder — sheriff — attorney — disclosures of notice — valid.**

12. Failure to append the name of the holder of the mortgage to a notice of foreclosure under a power, when it is signed by the sheriff and by an attorney as attorney for the assignee, and the notice discloses the name of the assignee foreclosing, does not render the sale invalid.

**Foreclosure — proceedings — regular — mortgagor — knowledge of — concealment — intent.**

13. Where all the proceedings in a foreclosure under a power of sale contained in the mortgage are regular and in full compliance with law, the fact that some of the acts might have been done as they were done for the purpose of preventing the mortgagor from acquiring knowledge of the foreclosure proceedings is not evidence of bad faith on the part of the mortgagee, in the absence of any showing of an intent to conceal the foreclosure, or of knowledge by the mortgagee that the mortgagor did not have actual knowledge of the proceedings.

Opinion filed June 11, 1913.

Appeal from a judgment of the District Court for Bottineau County, *Leighton*, J.

Reversed.

### Statement of Facts.

This is an action brought January 20, 1910, to vacate a foreclosure sale by advertisement of a second mortgage given by Claude Smith Bailey, the plaintiff herein, upon the N. E. quarter of section 19, in township 163 N., range 83 W., in Bottineau county, and to be allowed

to pay such mortgage. It is here for trial *de novo*. We find the facts to be:

(1) That on the 21st day of August, 1905, the plaintiff was the owner in fee of said premises, and that on that date he executed a second mortgage to one R. H. Grace thereon to secure the payment of the sum of $54, evidenced by promissory notes, the last of which became due November 1, 1906;

(2) That such mortgage was recorded in the office of the register of deeds of Bottineau county on the 28th day of August, 1905;

(3) That on the 13th day of September, 1906, said Grace assigned the said mortgage, with the notes secured thereby, to the Mohall State Bank, and that such assignment was recorded in the office of the register of deeds of Bottineau county, on the 30th day of November, 1906;

(4) That said Mohall State Bank, on the 30th of November, 1906, assigned said mortgage to the defendant, Karl S. Hendrickson, together with the notes secured thereby, and that the assignment thereof was recorded in the office of the register of deeds of Bottineau county on the 6th day of March, 1908;

(5) That on the 18th day of March, 1908, a foreclosure proceeding by advertisement was instituted on said mortgage. The body of the notice of sale recited the giving of the mortgage and the two assignments mentioned, and their recording as hereinbefore stated, together with the dates, the hour, and books and pages of record;

(6) That such notice of foreclosure sale was not signed by said Hendrickson, but was signed only by the sheriff of Bottineau county and "Bosard & Ryerson, attorneys for assignee, Mohall, N. D.;" and that the publication of such notice was made in the Lansford Times, a newspaper published at Lansford, Bottineau county, conforming to the requirements of § 2279, Rev. Codes of 1905, and entitled to publish legal notices, for six consecutive weeks, in the issues of March 20 and 27, 1908, April 3, 10, 17, and 24, 1908; and the sale was made on the date advertised, namely April 25, 1908, and at the proper place; that the firm of Bosard & Ryerson was located at Mohall, in the eastern part of Renville county, on the same line of railway on which Lansford is located; that both Lansford and Mohall are approximately 50 miles from Bottineau, the county seat;

(7) That on the 20th day of April, 1908, said firm of Bosard & Ryerson wrote the sheriff of Bottineau county, informing him that the sale was set for Saturday, the 25th day of April, that they had written the Lansford Times to forward him the affidavit of publication and bill for printing, and authorizing him to bid the property in for the amount due;

(8) That the publication was made in the Lansford Times, for the reason that it was only a few miles from Mohall and on a direct mail line therefrom; and that it was a matter of convenience to said firm of attorneys to have their legal notices published in the Lansford Times, and that they had practically all their legal notices published therein as a matter of convenience and to save delay, and for no other reason. It does not appear that the defendant himself knew in what paper publication was made, or the date of sale.

(9) That the sheriff first offered the land for sale in tracts of 40 acres each; that he received no bids therefor; that he then offered the same in legal subdivisions of 80 acres each, but received no bids therefor; that thereupon he offered it in one tract or parcel, and struck off and sold it to the defendant, Hendrickson, for the sum of $113.32; and that said Hendrickson was the highest bidder therefor, and that the price mentioned was the highest price bid; that the whole price so bid was paid by said purchaser;

(10) That the certificate of sale was recorded in the office of the register of deeds of Bottineau county, on the 2d day of May, 1908; that on the 27th day of April, 1909, a sheriff's deed on foreclosure by advertisement was executed and delivered by the sheriff of Bottineau county to said Hendrickson, and on the same day recorded in the office of the register of deeds of that county;

(11) That Bailey, the mortgagor, had no actual knowledge of the pendency of said foreclosure proceedings, or of the execution of the deed thereunder, until after the expiration of the period of redemption and the delivery of such deed to the defendant; that he made no attempt to ascertain the amount due on the mortgage, or to pay the same from the time it became due, in 1906, until after the execution and delivery of the sheriff's deed; that during such time he was in Indiana and in the state of Washington, and other places, and that he changed his residence or location without leaving instructions where to forward his

mail; but that from the month of April, 1908, to the fall of that year he was upon the premises in question;

(12) That the plaintiff, Bailey, leased said premises for the season of 1908, and received as rental therefor the sum of $240, and that the defendant, Hendrickson, never made any claim to the rents during the year of redemption or at any other time, and that it does not appear that he knew of the premises being rented or cultivated;

(13) That the Lansford Times was published 22 miles from the land in controversy, and that another legal newspaper was published at Antler, a distance of about 9 miles from such land.

*Bosard & Twiford,* for appellant.

The evidence with reference to the plaintiff's knowledge of the ownership of the mortgage was wholly irrelevant and immaterial. So, also, in regard to the value of the land. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345.

The sheriff's certificate of sale, shall be taken and deemed evidence of the facts therein recited. Rev. Codes, 1905 § 7137; Rev. Codes, 1905, § 7464.

The party foreclosing a mortgage need not sign his name to the notice. It is sufficient that it appears in the body of the notice. Michigan State Ins. Co. v. Soule, 51 Mich. 312, 16 N. W. 662; Babcock v. Wells, 25 R. I. 23, 105 Am. St. Rep. 848; 54 Atl. 596; Menard v. Crowe, 20 Minn. 448, Gil. 402; Fitzpatrick v. Fitzpatrick, 6 R. I. 64, 75 Am. Dec. 681, note 711; Woonsocket Inst. for Sav. v. American Worsted Co. 13 R. I. 255, 27 Cyc. 1470; Gibbs v. Cunningham, 1 Md. Ch. 44; Freeman, Executions, § 285; Perkins v. Spaulding, 2 Mich. 157; Harrison v. Cachelin, 35 Mo. 79; Wallis v. Thomas, 6 La. Ann. 76; Coxe v. Halsted, 2 N. J. Eq. 311; Hoffman v. Anthony, 6 R. I. 282, 75 Am. Dec. 701; McCardia v. Billings, 10 N. D. 373, 88 Am. St. Rep. 729, 87 N. W. 1008.

The statute does not require the notice to be signed by anyone. Rev. Codes, 1905, § 7460.

The sheriff must make the sale. Rev. Codes, 1905, § 7461.

All the law requires is that the advertisement must conform to statutory requirements. Reading v. Waterman, 146 Mich. 107, 8 N. W. 691; Rev. Codes, 1905, § 7460; Stephenson v. January, 49 Mo. 465.

The notice must not be misleading, or calculated to mislead. Iowa Invest. Co. v. Shepard, 8 S. D. 332, 66 N. W. 451; McCardia v. Billings, 10 N. D. 373, 88 Am. St. Rep. 729, 87 N. W. 1008; Judd v. O'Brien, 21 N. Y. 186; Reading v. Waterman, 46 Mich. 107, 8 N. W. 691; Noland v. Bank of Lee's Summit, 129 Mo. 57, 31 S. W. 341.

Notice of sale must be published six times, successively, in a weekly paper. McDonald v. Nordyke Marmon Co. 9 N. D. 290, 83 N. W. 6; Cotton v. Horton, 22 N. D. 1, 132 N. W. 225.

Publication in a legal newspaper of the county in which the land is situated is sufficient. Rev. Codes 1905, §§ 2279, 7459; Smith v. Commercial Nat. Bank, 7 S. D. 465, 64 N. W. 529; Trenery v. American Mortg. Co. 11 S. D. 506, 78 N. W. 991.

Mere inadequacy of the price at which the land sells at foreclosure sale is not sufficient ground for setting sale aside. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345.

*Noble, Blood, & Adamson,* for respondent.

A person, having the right to exercise a power of sale in a mortgage, must use the utmost good faith and fair dealing towards the mortgagor or owner, and mere technical compliance with the statute is insufficient. Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390 and cases cited; State ex rel. Kunz v. Campbell, 5 S. D. 636, 60 N. W. 34; Stacy v. Smith, 9 S. D. 137, 68 N. W. 198.

Courts of equity will scrutinize with care sales made under powers contained in mortgages, and great inadequacy of consideration will call for careful research and examination of the facts to justify annulling the sale. Longwith v. Butler, 8 Ill. 32; Briggs v. Briggs, 135 Mass. 306; Clark v. Simmons, 150 Mass. 357, 23 N. E. 108; Montague v. Dawes, 14 Allen, 369; Drinan v. Nichols, 115 Mass. 353; Thompson v. Heywood, 129 Mass. 401; Flint v. Lewis, 61 Ill. 299; Webbers v. Curtiss, 104 Ill. 309; Stewart v. Hamilton Bldg. & L. Asso. — Tenn. —, 47 S. W. 1106.

Such sales made to a mortgagee or to his assignee will be viewed with more suspicion than when made to third persons. 27 Cyc. 1483, and cases cited.

The statutes of this state allow a mortgagee, his assignee, or other

legal representative to "fairly and in good faith" purchase the premises. Rev. Codes, 1905, § 7463.

The officer who makes the sale must also act in good faith towards the mortgagor, and see that the sale is fairly and honestly conducted. Campbell v. Swan, 48 Barb. 109; Harrison v. McHenry, 9 Ga. 164, 52 Am. Dec. 435.

. The notice of mortgage sale by advertisement must be signed by the person in whom reposes the power of sale. Hebden v. Bina, 17 N. D. 235, 138 Am. St. Rep. 700, 116 N. W. 85.

It is an essential quality that the published notice of sale appear to be given by competent authority, and not by a mere stranger. Niles v. Ransford, 1 Mich. 342, 51 Am. Dec. 95; Bausman v. Kelley, 38 Minn. 197, 8 Am. St. Rep. 661, 36 N. W. 333; Roche v. Farnsworth, 106 Mass. 509; Dunning v. McDonald, 54 Minn. 1, 55 N. W. 864.

SPALDING, Ch. J.   The trial court found that the sale was invalid, holding that the failure of defendant to record his assignment until the 6th day of March, 1908, the publication of the notice of sale in the Lansford Times, the purchase by the defendant for the sum of $113.32, in the absence of any bidders or bids at the sale, and permitting the tenant of the plaintiff to remain in possession after the sale, and to pay rent during the period for redemption to the plaintiff, without knowledge of the foreclosure on the part of either tenant or plaintiff, and in permitting plaintiff to pay interest on the first mortgage for the year 1908, after the commencement of foreclosure proceedings and without knowledge thereof, and permitting the tenant to remain in possession during the year 1909 and raise a crop thereon without any knowledge on the part of the tenant or plaintiff,—entitled plaintiff to a vacation of such sale and deed, on the ground that such acts constitute bad faith on the part of defendant; and it awarded the plaintiff judgment, and required the defendant to accept the sum of $170.20, which plaintiff had deposited with the clerk of the court for satisfaction of the mortgage foreclosed.   We say here that there is no evidence in the record to sustain the finding of the trial court that there were no bidders at the sale.   We shall separately examine the questions raised.

1. We need not determine whether a bid by the sheriff, when acting as auctioneer or salesman, under the power of sale and under the stat-

ute, might be valid.    We do not construe the instructions and the act of the sheriff in striking off the premises in question to defendant as a bid by the sheriff.    The instructions transmitted to him by Bosard & Ryerson were, in legal effect, a written bid by defendant for a specified sum of the amount stated to be due in the notice of sale plus the costs of sale, and was a proper and customary method of making a bid in this state.    It simply amounted to an instruction that the defendant bid that sum, and that it could be struck off to him if no one bid more. It in no manner intimated to him that anything should be done to prevent others bidding a greater sum.

2. Here inadequacy of price at a foreclosure sale is not a ground on which to set aside a foreclosure in the absence of fraud, undue advantage, or prejudice.    Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345.   This is the rule which is established in this state, and we think it especially applicable where the purchaser at the sale is the holder of the mortgage.    What might be an inadequate price at an ordinary auction sale may not be so at a foreclosure sale when the purchase is made by the mortgagee as the highest bidder.    To illustrate, it is contended in this case that the actual value of the premises in question, relieved of the two mortgages, is, say $4,000, although there is not much, if any, proof to sustain this figure; but assume it to be $4,000.    We have no statute providing for an appraisal of lands sold under any method of foreclosure, and no limitation is placed on the amount for which it may be sold.    The mortgagee has a right to his security.    It is his privilege, and the law recognizes it as such, to protect his security.    To this end he is authorized to purchase at the foreclosure sale.    If we were to hold that he is compelled, in order to render the sale valid and protect his debt, to pay the full value that the mortgagor places upon the land, he would, in the absence of higher bidders, be compelled to advance, in a case like this, several times the amount of his mortgage to give him any protection. He must, in such case, not only be willing to take the land, but he must be willing to pay its actual value, and must have the means with which to do it.    In this case, if the valuation placed upon the land is $4,000 he would have been required, in order to protect his $113.32 to advance nearly $3,900.    This would be an unreasonable and oppressive requirement, and might destroy his mortgage security.    We

find no law making this necessary. When he has bid the amount of the mortgage debt and costs, in the absence of higher bidders, he has paid all that the law requires, or that, under circumstances which do not show bad faith conclusively, is incumbent upon him to bid; and the price is adequate under the circumstances, although it might not be adequate if bid at an auction sale not made under foreclosure. The status of this proceeding in this respect was identically the same as though the mortgagee had been present and bid in person. The contention of respondent is answered quite satisfactorily in the opinion in Power v. Larabee, 3 N. D. 502, 44 Am. St. Rep. 577, 57 N. W. 789, where this court, through Judge Corliss, said:

"The reasoning is that there must be at least two bidders at the sale; otherwise, there is no highest bidder. We are clear that this is a too narrow construction of the statute,—one which was never contemplated by the legislature. It would defeat every sale, unless the plaintiff could induce someone to bid upon the property. What the statute clearly means is that, after the public have been fairly notified of the sale, the property shall be sold for the best price that can be obtained. It is not necessary that there should be more than one bidder to make a sale at public auction. It is sufficient if the public has been fully advised of the sale, by legal publication of notice, and have the right to attend and bid. Those who do not attend the sale assert by their conduct that they do not wish the property at any price. Must the plaintiff's right to collect his judgment be forever stayed because he, alone, is willing to buy the property? We have no doubt on this point on principle, and we are able to cite eminent authority to support our view that the absence of all other bidders did not of itself render the sale either void or voidable. Learned v. Geer, 139 Mass. 31, 29 N. E. 215; 2 Freeman, Executions, § 308, pp. 1046, 1047,"

3. The publication of the notice of sale in the Lansford Times was in compliance with the statute governing the publication of such notices. Section 2279, Rev. Codes of 1905, prescribes the qualifications that a newspaper must possess to enable it to publish legal notices; and it is not for the court, in the absence of fraud, when the legislature has expressed its judgment as to such qualifications, to go back of such judgment and set it aside. In the case at bar testimony of a

member of the firm of Bosard & Ryerson clearly eliminates any fraud or fraudulent intent or bad faith in the publication of this notice.

4. The fact that Bailey had no actual knowledge of the foreclosure proceedings is not evidence of fraud. If it might be in any case under our statute, the record in this case, which shows that he was at Minot, at Towner, at Sherwood, at Bottineau, in Ohio and Indiana, and perhaps several other places, during the period involved, and that he did not see the mortgagee or the defendant, and that he left no notice to forward his mail from one place to another, almost precludes the possibility of his receiving notice had any attempt been made to give one, on which subject the record is silent. The statute prescribes the method of giving notice. The notice in this case was published, in accordance with law, in a newspaper qualified under the law, and for the length of time fixed by the law, and such notice has the same binding force that a foreclosure by action has when the defendants therein are personally served with process. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345. The plaintiff knew that he had given the mortgage; he knew that the last payment on it was due several years prior to the commencement of foreclosure proceedings; he also knew that it was unpaid. He was charged with notice of the sale, as the certificate was on record for a year, less a few days, before the deed issued. It was incumbent on him to protect himself. He knew that the mortgage provided for foreclosure by advertisement, and was charged with knowledge of the law on the subject. In the absence of fraud he cannot complain because he received no actual notice of the sale. The law charges him with such notice.

It is argued that the paper must be one of general circulation in the vicinity of the land to render the notice valid. The law does not so state, and even if this be correct the evidence fails to negative this as a fact. Plaintiff did not know of its having subscribers in that neighborhood; but his absence would preclude his knowing, and he is not shown to have made any effort to ascertain the fact. Can it be that a mortgagee, in addition to complying with the statute fully, must, before selecting the paper in which to publish, make an investigation to determine whether the neighbors of the mortgagor are subscribers to this or that paper? The Code makes no such requirement.

5. The six publications in six successive weeks, the last publication being the day before sale, fulfilled the requirements of the statute, § 7459, which provides that notice must be given by publishing the same six times, once in each week, for six successive weeks, in a newspaper of the county where the premises intended to be sold, or some part thereof, are situated. McDonald v. Nordyke Marmon Co. 9 N. D. 290, 83 N. W. 6, where this court said: "When this is done there need be no perplexing computation of days or weeks."

6. The fact that plaintiff paid interest on the first mortgage after the institution of foreclosure proceedings, and that the defendant did not ascertain that fact and prevent his doing so, or that he paid taxes on the premises, under the circumstances of this case, is no badge of fraud, and does not show want of good faith or reason for vacating the sale either in whole or in part. There is no showing that the defendant knew of any such act; and had he known of it, he had a right to assume that the defendant, with full knowledge of the second mortgage, was intending to pay or redeem from it, and it is not even a suspicious circumstance.

7. It is contended that the fact that the plaintiff collected the rent during the year of redemption, and that the defendant did not himself collect it, when he was entitled to the rents during that period, is an element entering into the equities in favor of plaintiff. The statute gives the purchaser at a mortgage sale the right to receive the rents during the year for redemption, but it nowhere makes it obligatory upon him to claim or collect them. He may do so, but if he does not, unless it appears clearly that his purpose in not claiming them is to conceal, from the owner of the right to redeem, the fact of the sale, it cannot be held to prejudice his title acquired by the purchase. In many cases his collection of the rent during the year for redemption would only result in his getting the land for a smaller sum than he bid at the sale. It happens that it would not have resulted so in the instant case, but that does not change the rule of law.

In Folsom v. Norton, 19 N. D. 722, 125 N. W. 310, a crop sown and harvested by the tenant was ripe and severed when the year of redemption expired, and it amounted to more than enough to pay the mortgage debt. The purchaser took it after securing his deed, but that was not held to invalidate the sale. *In that case he received the share of the*

*crop constituting the rent; in this case he did not receive it, but the plaintiff did.* Had no attempt been made to redeem, this would have inured to the advantage of plaintiff.

The record seems to indicate that defendant was a nonresident of the state; but be that as it may, he may have had no knowledge that the mortgaged land was cultivated or rented during the period allowed for redemption, and before the fact that he failed to collect rent for such period could become a badge of fraud it would, at least, have to appear that he was advised thereof. The record fails to show that he had any knowledge of the fact. It is said in Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, 50 L.R.A. 254, 81 Am. St. Rep. 562, 83 N. W. 238, in effect, that the purchaser is required only to credit the amount of rent actually received. See also Pacific Mut. L. Ins. Co. v. Beck, — Cal. —, 35 Pac. 169.

8. But it is next contended that the delay of the defendant in recording the assignment of the mortgage by the Mohall State Bank to him is a badge of fraud or evidence of bad faith, and should be taken into consideration, in support of the judgment of the trial court. The purpose of recording an assignment of a mortgage is the protection of the mortgagee, and under our statute it does not constitute notice of the assignment to the mortgagor. There is no requirement that it be recorded except for the purpose of qualifying the assignee to foreclose by advertisement, and as it may affect a satisfaction. The purpose of this requirement has no bearing on the rights of the parties, but is to insure a continuity in the chain of title. The plaintiff never examined the records to ascertain whether there were assignments of the mortgage, and never made inquiry, as far as disclosed by the evidence. He never inquired of Grace, the original mortgagee, as to the mortgage being due, or made any attempt or took any steps to pay it. He proceeded in utter disregard of the mortgage. How, then, can it be said that he is prejudiced by the failure of defendant to promptly record the assignment? Defendant recorded it some time prior to the commencement of the foreclosure proceeding. It was necessary for him to record it before instituting the foreclosure by advertisement, and we see no element of bad faith in this delay.

9. It is next contended that inasmuch as a less portion of the land than the whole would have paid the mortgage debt, the sale was invalid

because the whole tract or farm was sold. Section 7462, Rev. Codes of 1905, provides that if the mortgaged premises consist of distinct farms, tracts, or lots they must be sold separately. The recitals of the sheriff's certificate—and there is no evidence to the contrary—disclose that the sale was conducted in full compliance with this statute; at any rate he has no ground for complaint; that 40-acre tracts were first offered, then 80-acre tracts, and, there being no bidders, the whole quarter section was offered and sold. The land was in one tract or parcel and constituted one farm, and the sale in this manner in no way interfered with the plaintiff's right to redeem, nor in any manner prejudiced him. This point is fully covered in Power v. Larabee, 3 N. D. 502, 44 Am. St. Rep. 577, 57 N. W. 789, and other reasons are given in that case for sustaining the proceedings, so far as regularity of the sale is concerned, which we shall not take the time to repeat or quote. It is sufficient to say that it is there held that when the mortgagor waited sixteen months after the sale and four months after the time for redemption had expired, before questioning the sale, he waived his right to have it set aside for inadequacy of price, and because of irregularity in selling separate parcels in one mass. But in that case over 1,700 acres were sold for $96, and the land was worth at least $6,800. It consisted in eleven distinct parcels, and was sold in one lump. See also 2 Jones, Mortg. § 1857.

It is contended that Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390, fully sustains the trial court on the questions that we have thus far considered. In many respects that appeal involved proceedings conducted similarly to those in the case at bar, but one very important fact existed there which is not found here, and it was the determining fact which branded the whole proceeding with bad faith. It was found that, prior to the commencement of the foreclosure proceedings, plaintiff, in good faith, offered to pay the sum due; that he deposited in a bank the amount then due, lacking 35 cents. The mortgagee refused to receive the money; that on the mortgagor's attempting to pay the mortgage the mortgagee refused to furnish the information requested as to the amount due; that the mortgagor made known to the mortgagee his desire and ability to pay whatever was then due, and that the acts of the mortgagee operated as a waiver of a formal tender; and the court there held that these facts had a direct bearing on the good faith of the mort-

25 N. D.—33.

gagee in exercising the power of sale, and that, with this positive evidence on the subject, other acts might be considered.

Many authorities are cited from other states, claimed to be applicable, but we find none of them in point, except possibly some from Massachusetts. Most of them are where a direct conspiracy or some similar act was found, intended to prevent a fair sale of the premises. In some the sales were in private offices, and not at the place for holding public sales, or where the public would be attracted. In Massachusetts the courts, undoubtedly owing to the better established price of real property and the greater possibility of securing bidders therefor, hold very strictly on the subject. Then, again, we think that most of the authorities relied on were in the case of trust deeds, and the rule seems to be that less strictness is required in the case of a mortgagee purchasing at his own sale under a power of sale contained in a mortgage, than in the case of a trustee purchasing; and some authorities are from states where the sale is the final act to consummate the transaction and no period for redemption is provided, and a greater degree of care and strictness is then properly imposed upon the mortgagee or trustee. We are not quite able to understand how, when a multiplicity of acts is required on the part of a mortgagee in the foreclosure of his mortgage, and each act, taken separately, is done in full accordance with the law, when taken altogether they show bad faith or a want of good faith. To so hold would invalidate titles to thousands of farms in this state. It has always been construed by the profession as legal to advertise in any paper qualified under the provisions of the statute, whether located at the county seat or near the land or not; and that, in the absence of other badges of fraud, the location of the paper, when in the county as required by § 7459 and qualified as required by § 2279, is insufficient to invalidate a foreclosure sale. We also know that in but an infinitesimal percentage of such sales is there any competition in bidding, and to hold that there must be more than one bidder would make necessary one of two things,—either that the mortgagee should secure the attendance of by-bidders, or that his security would be rendered ineffective and valueless.

10. It is also urged that the fact that the notice of sale was not signed in the name of the assignee of the mortgage renders the sale invalid. The notice was signed by the sheriff and by "Bosard & Ryerson, At-

torneys for Assignee, Mohall, N. D." The body of the notice gave the name of the assignee, the date of the record of the assignment, and the book and page where it was recorded. While the purpose of our statute, providing for foreclosure by advertisement or through the execution of a power of sale, contained in the mortgage, requiring the record of all assignments, is to provide a perfect and complete chain of title as far as the mortgage and all of its incidents are concerned, it further requires the recording of a power of attorney from the holder of the mortgage to the attorney making the foreclosure, authorizing him to foreclose. This power of attorney must be recorded when the sale is made, and presumably such power was of record in the case at bar. The burden was on the party seeking to avoid the sale to show that it was not. He has not done so, and taking the allegations of the notice, which show the assignment and the signature of the attorneys as attorneys for the assignee, the chain of title is rendered complete so far as it relates to the mortgage. It shows an assignment to Hendrickson, and presumably a power of attorney to Bosard & Ryerson to foreclose, and the foreclosure made by that firm, and the sale. The appending of the name of the assignee of the mortgage to the notice would render the chain of title no more complete than it is already shown to be, and we think the omission of the signature did not render the notice inadequate or the sale invalid. One or two authorities are cited to the effect that it is necessary that it be appended, but they are from jurisdictions where the power of attorney, if any, is not required to be of record. Tending to support our conclusions, see Woonsocket Inst. for Sav. v. American Worsted Co. 13 R. I. 255; Menard v. Crowe, 20 Minn. 448, Gil. 402; note in 75 Am. Dec. page 711. The question seems analogous to that of notice of sale under execution, and it seems to be universally held that the omission of the name of the execution creditor to the notice of execution sale is immaterial where his name appears in the body of the notice. There is no statutory requirement in this state that the name of the mortgagee or the assignee of the mortgage be appended to the notice of sale. Had the legislature deemed it essential that this be done, it would undoubtedly have made such a requirement in connection with the provision for the recording, etc., of assignments.

Summarizing briefly our views, we may say that to grant the contention of respondent and set aside this sale, in an action brought more

than a year and nine months after the sale, and more then nine months after the execution and delivery of the sheriff's deed, when the mortgagee has fully complied with the requirements of the statute regarding foreclosures under a power, and in view of the testimony of the attorneys foreclosing as to their reason for giving the notice in the paper in which it was published, would be to repeal by judicial fiat the laws enacted by the legislative assembly providing for foreclosure of real estate mortgages under a power of sale. It might render invalid a great proportion of such foreclosures heretofore made in this state, and this with no authorities cited, which we deem in point, to sustain the action of the trial court. Numerous Massachusetts cases have been called to our attention, but in Massachusetts there is no right of redemption after the sale. Furthermore, their laws do not provide the safeguards around the sale which are provided in this state. When the right to redeem ceases at the time of sale, the sale becomes, in effect, like any other auction sale, and affords an inducement to purchasers to buy. They know that they are then getting the land the same as at any public auction. They know what they are getting; but in this state where a year is given, after the sale, before title passes, and it is subject to redemption during that time, there is no such inducement to bidders, and in fact in many cases there is no bidder except the mortgagee. The mortgagor has the whole year in which to protect his interest, in addition to the time which may elapse between default and sale, and the lower the successful bid the less he has to pay to redeem. It will thus be seen that his equities are far superior here to those of the mortgagor in a state where there is no redemption after sale, and courts in states like Massachusetts are warranted in exercising greater leniency towards the mortgagor than here.

Without unduly extending this opinion, we call attention to a few of the authorities cited. In Clark v. Simmons, 150 Mass. 357, 23 N. E. 108, the sale was adjourned from time to time without any new publication or any notice of any adjournment except by oral proclamation by the auctioneer. The sale did not take place until three months after the time advertised, and then was for much less than its market value. A second mortgagee had requested to be notified when the sale would take place, but the notice was given him without stating the hour or place of sale; and the record shows that he had been unable, upon in-

quiry, to learn anything about it. It appears that the mortgagee knew that the second mortgagee desired to protect his mortgage, and in effect had assumed the duty of giving him information as to when and where the sale would occur. This duty he did not perform, and it was held that, under such circumstances, good faith had not been exercised. It further appears that the adjournments were made with no one present except the auctioneer and the agent of the mortgagee; hence the notices of adjournments were no notice whatever to the world. The complaining party was the second mortgagee, who was relying upon the express or implied agreement of the first mortgagee to inform him of the time and place of sale.

In Thompson v. Heywood, 129 Mass. 401, the circumstances surrounding the notice of sale were held to show a failure to comply with the law on that subject, and the hour at which the sale was set was so early in the morning as to be unreasonable, and express fraud was shown in other respects. It was also shown that the purchaser was a participant in the fraud. It does not appear that the statute in that state defines the qualifications which must be possessed by a newspaper to make publication therein legal publication, but rather the contrary seems to appear.

In Montague v. Dawes, 14 Allen, 369, the notice was too meager to give the necessary information as to the place of sale and other particulars; and the sale took place at a private office in a private building, a place at which the public would not think of looking for the sale of such premises. In the case at bar the sale took place at the place fixed by law, and where all such sales occur. There were other particulars in the last case cited, which went to the merits and good faith in the conduct of the sale. These citations are sufficient to illustrate the lack of value of the Massachusetts cases as authority, particularly in view of there being no redemption after sale.

We do not question the correctness of the principles announced regarding good faith on the part of the mortgagee; but in the case at bar the mortgagee was not present, either in person or by attorney, nor was any agent appointed by him present. The auction was conducted by the sheriff, who is made, by statute, auctioneer. The mortgagee had no choice in the selection of the auctioneer, and is therefore not charged, to the same extent, with his acts or failure to act that he would be had

he been employed by himself. North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453.

Illinois cases are also called to our attention, but in that state it appears that there is no redemption allowed after foreclosure sale; and, without referring directly to authorities from that state, we may say that they mostly relate to sales conducted by trustees named by the parties in trust deeds. Numerous cases are found and called to our attention which are inapplicable, because they relate to objections made to the confirmation of a sale on foreclosure by action. It is clear that when objection is made to the confirmation of a sale before the rights of parties have become established, the court will be justified in considering objections which are of less weight than would be sufficient to set aside a deed long after its execution and delivery, where all the proceedings were in conformity with the statute. A large number of authorities on the subject are cited in the notes to § 628, Wiltsie on Mortgage Foreclosure, 3d edition.

We regard Richards v. Holmes, 18 How. 143, 15 L. ed. 304, as a controlling authority in this case, and that the only distinction which can be drawn between the two cases is that in that case the auctioneer was in fact and law the bidder for the creditor, while in the case at bar, as we have held, he was not a bidder, but received a bid in writing. He was not instructed by the mortgagee or his attorneys, in the instant case, to get it for the least sum possible. He was instructed to bid a certain amount, and this carried the understanding that he should bid no more, and that if others offered more they would get it. Hence it conveyed no intimation that he was to act in contravention of the interests of the mortgagor, or to keep down or reduce the price. In the last case cited the Supreme Court of the United States says: "An agency simply to bid a particular sum for a purchaser, amounting to no more than receiving from the purchaser, before the auction, a bid which is to be treated as if made there by the purchaser himself, is not necessarily inconsistent with any duty of the auctioneer, and does not enable anyone to avoid the sale."

The instructions in the case at bar, given the sheriff, were given without regard to the presence or absence of other bidders, and with no knowledge as to whether others would be present. It is perfectly

clear that the price bid by the defendant was more than any other person was willing to give, after fair and legal notice of the sale.

It is held in Worley v. Naylor, 6 Minn. 192, Gil. 123, that a sale is legal when made on the same day as the last publication of the notice, under the rule regarding the computation of time. In the case at bar the sale did not occur until the next succeeding day, and whether or not there was time for bidders residing at a distance from the county seat to attend, after the last publication, is immaterial; there had been other publications, and to hold that every possible bidder must have actual notice of the time, place, and fact of sale would be absurd. The rule announced in Richards v. Holmes, supra, is that it is only some practice to prevent bidding, or to procure a sale for less than the property would otherwise have brought, which can be relied upon by the complainants to avoid the sale.

It may be conceded that some of the grounds alleged for holding the sale invalid might have a tendency to show it so had they been supported by proof of the knowledge or purpose of the assignee of the mortgage, but unsupported they are without significance. The plaintiff had the protection the law afforded him. Legal notice was given him, and, as held by this court in prior decisions, he was charged with knowledge of the foreclosure proceedings. The statute does not make it incumbent upon the mortgagee to give the mortgagor personal notice. It does not charge him with the burden of seeking the debtor and demanding payment of the debt. The debt is payable at a specified place, and the debtor is charged with knowledge that he owes the obligation, when it will be due, where it is payable, and with the duty of making payment at such time and place. We cannot comprehend how the debtor may have grounds for complaint because he was permitted to collect two years' rent, one during the year of redemption and the other the year following the issuance of the sheriff's deed. He charges that this, particularly the rent for the last year, was permitted to be collected by him to conceal from him the fact of sale; but we are not advised as to how a concealment of the fact of sale after the sheriff's deed had issued and was on record would have resulted to the advantage of the mortgagor. If the fact of his being permitted to receive the benefit of rent for two years might, under other circumstances, constitute evidence of bad faith on the part of the mortgagee, it certainly cannot, in the case

at bar, in the absence of a showing that the mortgagee knew that the premises were occupied by a tenant, or even cultivated or in rentable condition. Proof of bad faith or fraud should be at least reasonably clear and definite, and courts should not be asked to infer fraud from acts which in themselves are innocent, when not explained in any manner inconsistent with innocence or good faith. Plaintiff asks us to surmise, in effect, that bad faith was exercised, notwithstanding every act was performed in accordance with the statute, and because, after all the acts were performed and the sheriff's deed issued and recorded and title vested, he collected rent to his own advantage. We are thus asked to cast upon the mortgagee the burden of knowing more about the premises, its occupancy, the crops, and what takes place with reference to them, than the mortgagor himself knew. In other words, we are asked to excuse the ignorance or lack of information of the mortgagor, but to charge the mortgagee with knowledge of all the facts which it was possible to know, and among them the very facts which we are asked to excuse the mortgagor from knowing or acting upon. Neither the circumstances nor the law make any such requirement.

We regret that the mortgagor has not been able to realize his expectations regarding his property, but he is the party responsible for this failure, and we see no way, without violating the law ourselves, to relieve him from his own negligence. The judgment of the District Court is reversed, and it is directed to enter judgment in favor of the defendant.

FISK, J. (dissenting). I am compelled to dissent from the views of my associates as expressed in the opinion of the chief justice. The majority decision reverses the judgment of the district court, and confirms as valid a title obtained through a mortgage foreclosure by advertisement, and a sheriff's deed to a quarter section of land concededly worth at least $4,000 for a paltry debt of about $50, and the costs of foreclosure. The purchaser at the sale and the person to whom the sheriff's deed runs was the holder of the mortgage, and the rights, therefore, of an innocent purchaser are not involved. The principles announced in Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390, are in the main analogous to the case at bar, and, in my opinion, should be controlling.

As I view it, the basic fallacy in appellant's position, as well as in that of my associates, consists in the assumption that because, forsooth, the assignee of the mortgage and his attorneys in foreclosing such mortgage *literally* complied with the words of the statute relative to foreclosures by advertisement, that this is all that is "nominated in the bond," and that the purchaser is entitled to his "pound of flesh." While I entertain the highest regard for the attorneys who conducted this foreclosure, and do not for a moment question their good faith, and with all due respect for the opinions of my associates, I feel constrained to differ from them. A construction of our statute to the effect that a literal compliance with its provisions is all that is requisite to devest the mortgagor of his title and vest the same in the purchaser at a foreclosure sale is, I believe, unwarranted. I cannot subscribe to the doctrine that, because the *letter* of the statute is complied with, if the notice of foreclosure sale is published for the requisite period in "a newspaper of the county where the premises intended to be sold are situated," that this alone suffices. The legislative purpose in requiring the publication of such a notice evidently was to attract the attention of those persons who would be likely to become prospective bidders at the sale; the end in view, of course, being to protect the rights of the interested persons by securing competitive bids at the sale, and thus avoiding a sacrifice of the property. I deny that the court is judicially legislating when it places a construction upon the statute which will tend to effectuate the evident legislative purpose as above stated.

The only notice given in this case was by publication in a weekly newspaper published at Lansford, a small village some 22 miles distant from the land, and having no circulation in the vicinity thereof. It might just as well have not been published at all in so far as being of any actual benefit is concerned. It was not a paper nearest the land, nor the most likely nor reasonably likely to accomplish the purpose intended by the legislature. I do not contend that any hard and fast rule should be laid down in such cases, nor do I contend that the sale should, for this reason alone, be set aside; but I do assert that where, as in this case, no bidders were present and the land was struck off to the mortgagee pursuant to a letter of instruction containing his bid for the paltry sum due him with costs, that it will be presumed that the power of sale was not exercised fairly and in good faith as the law requires.

I venture the assertion that no one can properly contend, under the facts, that in equity and good conscience this plaintiff should be deprived of a right to redeem, even though the year for redemption under the statute has expired. The price was so grossly inadequate as to shock the conscience of the chancellor. The fact that plaintiff did not redeem within the year, coupled with the further facts that the defendant allowed him to pay the taxes on the land and the interest on the first mortgage, is, to my mind, conclusive of the fact that plaintiff did not know of the existence of such second mortgage, nor of the foreclosure sale. Of course if he gave the mortgage he is presumed to have had knowledge of it, but he evidently had overlooked or forgotten it. Another quite significant fact which should not be overlooked is that, so far as this record discloses, and no doubt the fact is, that no effort whatsoever was made by defendant to collect the amount of this second mortgage without foreclosure. While it is true, this was not legally necessary, yet it is what most people would do and what fair dealing with a fellow man demands, and for defendant not to do so is a circumstance showing a want of good faith on his part.

I shall not take the time nor the space required in order to review the authorities. I take it to be well settled that the powers of sales in mortgages must be exercised in the utmost good faith, and that under facts such as are here disclosed the court should and will diligently "scrutinize the conduct of the party placed by the law in a position where he possesses the power to sacrifice the interests of another in a manner which may defy detection," and "should stand ready to afford relief on very slight evidences of unfair dealing, whether it be made necessary by moral turpitude or only by a mistaken estimate of others' rights." As very aptly said by the supreme court of South Dakota, "A court of equity in the exercise of its equitable powers will scrutinize with care sales made under powers of sale contained in a mortgage, and where there is great inadequacy of consideration it will be astute in extracting from the facts of the case sufficient to justify annulling the same." Story v. Smith, 9 S. D. 137, 68 N. W. 198. See also Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390.

In conclusion, I believe the trial court was fully justified in granting relief to plaintiff, and that its decision should be affirmed.