THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE U. S., Respondent, v. LICKNESS, et al, Appellant.

(262 N. W. 206.)

(File No. 7771.   Opinion filed August 5, 1935.)

*Louis H. Smith,* of Sioux Falls, for Appellant.

*Boyce, Warren & Fairbank* and *John S. Murphy,* all of Sioux Falls, for Respondent.

PER CURIAM. This action was brought for the foreclosure of a real estate mortgage. The amount alleged in the complaint to be due is $11,812.99 together with interest thereon at 5½ per cent per annum since June 1, 1931. Defendant does not question the amount due nor that the same is in default; neither is any question raised as to the regularity or legality of the mortgage. The only ground set up as a defense is the existing depression, and the shrinkage of land values that has taken place since the execution of the mortgage. It is alleged that the value of the property at the time of the execution of the mortgage was $22,500; that at the time of the execution of the mortgage the amount of the loan was only 40 per cent of the value of the mortgaged property; that the amount due should be reduced in proportion to the shrinkage of the value of the land, and that when said reduction is made the amount due to plaintiff at this time does not exceed the sum of $4,800; and in his prayer for relief he asked that the amount now due to plaintiff be decreed to be the sum of only $4,800, and that the court fix terms of payment thereof in accordance with the conditions as set forth in his answer: "That if the foreclosure be decreed herein that the sale of the property be by order of the court delayed or suspended for a period of two or more years or for such time as the court shall deem just and equitable in the premises." The real gist of defendant's defense is stated as follows: "This wholesale foreclosure of mortgages engenders the

most dangerous unrest because by these foreclosures thousands and millions of heretofore substantial and solid citizens are made homeless. Losing a home, the accumulation of a life of toil and saving, the sacred soil and scene of family affection and joy, by the judgment of foreclosure throws out into the world and state the entire family without shelter or means of livelihood and with spirits utterly destroyed. Imagination cannot be too broad to appreciate the ultimate result to government."

Plaintiff demurred to defendant's answer on the ground that the same does not state facts sufficient to constitute a defense. The trial court sustained the demurrer, and the defendant appeals.

By his answer in this case the defendant is asking the court to wholly disregard the terms of the contract entered into by the plaintiff and defendant, and to disregard the law governing such proceedings as well. No one would be more pleased than the members of this court to relieve the debtors of this state of the hardships forced upon them by the prevailing conditions; but to grant the relief the defendant is asking would be entirely beyond the equity powers of this court. The law governing mortgages fixes the rights of the parties to the mortgage, and the law also prescribes the remedy of the parties in case the note and mortgage are not paid at maturity. These provisions of law are as much a part of the contract as though they were written into the contract in hæc verba, and it is the plain duty of the court to see that the conditions of the contract are, so far as possible, complied with.

Appellant in his brief cites many cases where courts of equity have relieved parties from the harshness imposed upon them by the strict letter of contracts, but none of such cases are analogous to this case. The question involved is discussed at length in the following cases: Home Building & Loan Ass'n v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481; Federal Land Bank v. Wilmarth (Iowa) 252 N. W. 507, 94 A. L. R. 1338, and Note 1352; Suring State Bank v. Giese et al, 210 Wis. 489, 246 N. W. 556, 85 A. L. R. 1477. The most that is asked in any of these cases is a delay in the trial of the case or an extension of the period of redemption after sale.

To do what defendant is asking us to do in this case would be taking the property of plaintiff and giving it to defend-

ant without compensation. This is the question under consideration in Louisville Joint Stock Land Bank v. Radford (U. S.) 55 S. Ct. 854, 869, 97 A. L. R. 1106, recently considered by the Supreme Court of the United States. In concluding that case the court say: "The province of the Court is limited to deciding whether the Frazier-Lemke Act [Act June 28, 1934, c. 869, 48 Stat. 1289] (11 USCA § 203 (s), as applied has taken from the bank without compensation, and given to Radford, rights in specific property which are of substantial value. * * * As we conclude that the act as applied has done so, we must hold it void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken even for a wholly public use without just compensation."

██ ██ Defendant bases his right to the relief for which he is asking, upon the extraordinary conditions now existing. But existing conditions, conceding them to be as bad as defendant represents them to be, do not warrant the court in disregarding the constitutional rights of the plaintiff.

In the recent case of A. L. A. Schechter Poultry Co. et al. v. United States (U. S.) 55 S. Ct. 837, 842, 97 A. L. R. 947, usually known as the NRA case, the Supreme Court use the following language: "Extraordinary conditions may call for extraordinary remedies. But the argument necessarily stops short of an attempt to justify action which lies outside the sphere of constitutional authority. Extraordinary conditions do not create or enlarge constitutional power. The Constitution established a national government with powers deemed to be adequate, as they have proved to be both in war and peace, but these powers of the national government are limited by the constitutional grants. Those who act under these grants are not at liberty to transcend the imposed limits because they believe that more or different power is necessary." This language is as germane to the present case as it is to the case in which it is used. We have no right, either at law or in equity, to reduce the amount of plaintiff's claim or to delay the date of sale. If the amount of the bid should be inadequate due to the extraordinary conditions now existing, or other grounds for equitable interference should arise, then, and not now, will be the time to apply for relief.

We know of no law that authorizes us to grant the relief asked for by the defendant at this time; therefore the demurrer to the defendant's answer was properly sustained.

The order appealed from is affirmed.

WARREN, P. J., and POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.