FEDERAL LAND BANK OF OMAHA, Appellant, v. FENSKE, et al, Respondents

(291 N. W. 596.)

(File No. 8272. Opinion filed April 17, 1940.)

**Frank L. Sieh** and **George H. Fletcher,** both of Aberdeen, and **Clair L. Kintz** and **Otto A. Gruhn,** both of Omaha, Neb., for Appellant.

**Elmer Thurow,** of Aberdeen, for Respondent.

ROBERTS, J.   On May 8, 1935, the defendants for a valuable consideration executed and delivered to the defendant The Federal Land Bank of Omaha their promissory note for $3,800, with interest, and secured the payment of the note by executing and delivering a mortgage on two quarter sections of land owned by them in Brown County.   At the time of the commencement of this action on April 22, 1938, defendants were in default in the payment of the first five semi-annual installments and had failed to pay taxes for the years 1934 to 1937.   Defendants defaulted and judgment for $4,611.51 was entered on June 30, 1938.   The usual provisions for sale and deficiency were included in the judgment, and the sale was regularly held and the property described in the mortgage was sold by the sheriff of Brown

County to the plaintiff, the only bidder at the sale, for the sum of $4,000, leaving a deficiency of $687.65. On September 10, 1938, the circuit court confirmed the regularity of the sale proceedings, and on its own motion issued an order requiring the plaintiff to show cause why the foreclosure sale should not be set aside and a resale ordered if the mortgagee did not agree to accept the premises at the amount of the mortgage debt and costs and forego a deficiency judgment. Evidence was submitted at the hearing as to the value of the mortgaged premises. Witnesses for defendant placed the value of the property between $4,800 and $6,400, while those for the plaintiff testified that the value was not in excess of the amount bid at the sale. Appraisals of the property made by the plaintiff and certain pamphlets which the plaintiff had prepared and distributed pertaining to the appraisal basis for Federal Land Bank loans were received in evidence. These publications emphasize that the law under which plaintiff bank operates provides that "the value of land for agricultural purposes shall be the basis of appraisal and the earning power of the land shall be a principal factor."

In the order which was entered on October 25, 1938, and from which plaintiff appeals, the trial court stated:

"The Court finds that the mortgagors and the public generally were induced to believe that the plaintiff and its controlling agencies had established and regarded farm lands affected or to be affected with Federal Land Bank mortgages as being worth the normal value of such lands, such value being based upon normal returns and prices over an average period of time, and that the plaintiff mortgagee, in event of foreclosure, would rely upon such basis of valuation and would bid fairly and in good faith for such mortgaged premises, and that a measure for valuing land was thereby created.

"The Court further finds that upon the filing of the application, the plaintiff mortgagee caused such land to be inspected and appraised by an official land bank appraiser, which report was received in evidence, and which shows, inter alia, that said farm possessed a 'normal value for agri-

cultural purposes of $9,075.00' in March, 1935, and the Court finds such to have been the fact.

"The Court further finds that at the time said loan was made there was no market value in cash therefor; that at such time there had been a succession of total crop failures by reason of drouth and that the the mortgagors were induced to and did believe that the plaintiff did not and would not value land at any time upon the basis of a non-existent cash market therefor but would value the same at normal values.

"The Court further finds that said farm and the improvements thereon is in substantially the same condition as when said loan was made and is equally productive and valuable for agricultural purposes and that the buildings thereon are in good condition except for needing paint and that there has been little or no erosion and that the land is free from noxious weeds.

"The Court further finds that said farm is fairly and reasonably worth at normal values and prices a sum substantially in excess of the amount of the plaintiff's judgment and not less than $15.00 per acre or $4,800.00 in all.

"The Court further finds that on or about July 7, 1938, being five days after entry of judgment herein and more than three weeks prior to the execution sale, the plaintiff mortgagee caused said farm to be reappraised by an official land bank appraiser who determined and reported to this plaintiff that said farm is of the normal value of $6,000.00 for agricultural purposes, the same being $2,000.00 in excess of the plaintiff's bid, and the Court finds the normal worth and value of the mortgaged premises to be $6,000.00 * * *

"The Court finds that at the foreclosure sale heretofore held, the plaintiff did not bid the fair and reasonable value of the mortgaged land to the extent of its mortgage debt and therefore did not bid fairly and in good faith; and that under the circumstances recited the plaintiff secured an unconscionable advantage in acquiring both the sheriff's certificate of sale and the deficiency judgment in the sum of $687.50; and that the plaintiff's bid was so disproportionate to the fair and reasonable value of the land and so much

less than the plaintiff's judgment that the same is shocking to the conscience of the Court.

"It is therefore ordered and adjudged that the foreclosure sale * * * be and the same is hereby vacated, annulled and set aside, and the cost of making such sale is hereby disallowed, and * * * a new sale to be held as required by law unless within 30 days from the service of this order the plaintiff shall increase its bid for said premises to equal the amount of the plaintiff's judgment and costs of sale, in which event said sale shall be permitted to stand as made, and the sheriff's certificate of such sale shall be amended or a new certificate issued reciting the purchase price of said land to be the amount of the plaintiff's judgment with costs."

Plaintiff contends, first, that a sale of the mortgaged property under a decree of foreclosure is wholly statutory and that there is no statute authorizing a court to fix a valuation with an option in the mortgagee to accept or reject such valuation, and in the event of a rejection, to order a resale; and, second, that inadequacy of price, unaccompanied by fraud, mistake, or irregularity, is insufficient to justify the setting aside of a judicial or execution sale, citing Lockhart v. Ruden, 62 S. D. 1, 250 N. W. 349; Lipsey v. Crosser, 63 S. D. 185, 257 N. W. 125; First Nat. Bk. v. Black Hills Fair Ass'n, 2 S. D. 145, 48 N. W. 852; Kirby v. Ramsey, 9 S. D. 197, 68 N. W. 328; Loomis v. Stoddard, 42 S. D. 272, 173 N. W. 859; Kaufman v. Farmers' State Bank, 45 S. D. 515, 189 N. W. 511; Trenery v. American Mtg. Co., 11 S. D. 506, 78 N. W. 991; Lougee v. Matters, 124 Neb. 223, 246 N. W. 242; St. Paul Tr. & Sav. Bk. v. Olson, 52 N. D. 315, 202 N. W. 472.

We are not concerned with the requirements set up by chapter 146, Laws 1939, for rendition of deficiency judgments in mortgage foreclosure actions. This statute was enacted after the rendition of judgment and sale in the present action.

■ It is unquestionably within the broad equitable powers of the circuit court after sale to hear and consider

evidence for the purpose of determining whether inequities have resulted and if equities require the interference of the court to set aside a sale. In Kirby v. Ramsey, supra, an action to foreclose a real estate mortgage, the trial court after confirmation set aside the sale and ordered a resale. In the opinion in that case it is said [9 S. D. 197, 68 N. W. 329]: "The sale under discussion was in an equitable action, under a decree of foreclosure; and while perhaps, not strictly a judicial sale * * * it should be governed by equitable rules. The primary purpose of the proceeding is to satisfy plaintiff's claim out of the property hypothecated for its payment, and the court should see that this is done in a just and equitable manner. It has, we think, in the exercise of a sound legal discretion, ample power to prevent any substantial abuse of its process." And, as stated in Lipsey v. Crosser, supra [63 S. D. 185, 257 N. W. 128], an action to set aside a foreclosure by advertisement: "A mortgage situation from its inception to its conclusion is and has been from the earliest times within the field of equity jurisdiction. A bill in equity was long the only permissible method to enforce a mortgage, and the fact that our statute permits the enforcement of a power of sale mortgage by sale at public auction pursuant to published notice does not, and never can, remove the situation beyond the reach of a court of equity. The power of sale in a mortgage is a power in trust in relation to realty. Section 405, R. C. 1919; Brown v. Hall (1913) 32 S. D. 225, 142 N. W. 854. The holder of such power owes to the mortgagor and to all interested in the equity of redemption a duty of good faith and fair and equitable dealing (Wiltsie on Mortgage Foreclosure [4th Ed.] § 883; Jones on Mortgages [8th Ed.] § 2451), and a court of equity will require him to act accordingly, and, if he has pursued a course of conduct that is unconscionable and inequitable, he cannot successfully justify himself merely by pleading compliance with the letter of the law."

■■ It is the right of a mortgagee in a foreclosure action to have the mortgaged property sold to satisfy his debt. Equitable Life Assur. Soc. v. Lickness, 63 S. D. 618, 262 N. W. 206. But the debtor is not without protection

when a dislocation of real estate values has resulted from economic conditions and the mortgagee bids in the property in utter disregard of values. The difference between the debt and the amount for which the property sold is generally the basis for determining a deficiency judgment. But when there is no market for real estate and no competitive bidding and the ordinary basis for the determination of a deficiency disappears, the price bid by the mortgagee has no relation to the value of the property. A judicial or execution sale under such circumstances "amounts merely to a declaration by the judgment creditor that he elects to take the property over at a price determined by himself and to credit such amount on the judgment." Teachers' Retirement Fund Ass'n v. Pirie, 150 Or. 435, 46 P.2d 105, 108. In the case of Honeyman v. Jacobs, 306 U. S. 539, 59 S. Ct. 702, 704, 83 L. Ed. 972, the mortgagee bid in the property on foreclosure sale and the trial court denied a deficiency judgment on the ground that the value of the premises equalled the debt. The court acted under a statute providing in substance that the court shall determine the value of the premises upon motion for leave to enter a deficiency judgment and that such judgment may be entered for the excess, if any, of the amount of the debt and of prior liens and encumbrances over the value of the premises or the sale price whichever shall be the greater. The basis of the decision sustaining the constitutionality of the statute is that a court of equity could accomplish the same result in the absence of legislative authority and that the statute merely "assured to the court the exercise of its appropriate equitable powers."

In the case of Suring State Bank v. Giese, 210 Wis. 489, 246 N. W. 556, 557, 85 A.L.R. 1477, the Supreme Court of Wisconsin, referring to the effect of depressed economic conditions operating to prevent competitive bidding, said:

"The question presented is one of great importance, and one to which earnest consideration has been given. The court takes judicial notice of the fact that the present economic depression has not merely resulted in a serious dislocation of the value of real estate, but also in the almost complete absence of a market for real estate. As a conse-

quence there is no cash bidding at sales upon foreclosure.
*   *   *

"While it has been said that mere inadequacy of consideration is not a ground for setting aside a foreclosure sale, this rule has been rather carefully circumscribed by the court. In Griswold v. Barden, 146 Wis. 35, 130 N. W. 952, 953, this court, speaking through Mr. Chief Justice Winslow, said: 'It has been said by this court that it is the settled practice of courts of equity to refuse a resale for mere inadequacy of consideration, and that this court will not depart from that rule where no other cause exists. Meehan v. Blodgett, 86 Wis. 511, 57 N. W. 291. This is doubtless a correct statement of the rule, but it seems from the argument in the present case that it may be easily misunderstood. It must be strictly confined to cases where there is absolutely no fact appearing, except that the price is inadequate. Whenever other facts appear, such as mistake, misapprehension, or inadvertence on the part of the interested parties or of intending bidders, as a result of which it seems to the court the failure to obtain a fair and adequate price for the property was due in whole or in part to such mistake, misapprehension, or inadventence, the court will readily refuse to approve the sale. No fraud is necessary to justify the court in so withholding its approval. The question simply is, Is the sale under all the circumstances one of which the court in justice to all parties should approve?'

"This doctrine is also stated in Kremer v. Thwaits, 105 Wis. 534, 81 N. W. 654, and Johnson v. Goult, 106 Wis. 247, 82 N. W. 139. What was said in the Griswold Case is applicable here, when the fact of an inadequate price is coupled with an emergency which operates to prevent competitive bidding. A court of equity is justified in refusing to confirm the sale and ordering a resale."

See also 42 C. J. 223, § 1861; Federal Title & Mortg. Guaranty Co. v. Lowenstein, 113 N.J. Eq. 200, 166 A. 538; Michigan Trust Co. v. Cody, 264 Mich. 258, 249 N. W. 844; First Nat. Bk. of Waseca v. Paulson, N. D., 288 N. W. 465; Mellen v. Edwards, 179 Wash. 272, 37 P.2d 203, 207; Farm-

ers' & Mechanics' S. Bank v. Eagle Bldg. Co., 151 Misc. 249, 271 N.Y.S. 306.

■ We are convinced from a consideration of the record that the trial court was governed by considerations which were not applicable in the proceeding, and abused its discretion in entering the order appealed from. It is stated in defendants' brief that they do not contend that a sale of the mortgaged property should be set aside because of inadequacy of the price bid, unaccompanied by unfair conduct on the part of the mortgagee. They contend that the price bid considered in the light of the conduct of the plaintiff, beginning with representations before and at the time the loan was made, suffice to justify setting the sale aside. The court found that real estate values were much below normal at the time defendants applied for a loan; that defendants were led to believe that plaintiff "had established and regarded farm lands affected or to be affected with Federal Land Bank mortgages as being worth the normal value * * * and that the plaintiff mortgagee, in event of foreclosure would rely upon such basis of valuation"; and that the appraisal by the plaintiff on the filing of application for a loan and a reappraisal after entry of judgment and prior to sale of the property in the present action were greatly in excess of the price bid at the sale.

The Act of May 12, 1933, amending the Federal Farm Loan Act, 12 U.S.C.A. § 771, Subsec. 5, provides that no loan "shall exceed 50 per centum of the value of the land mortgaged and 20 per centum of the value of the permanent, insured improvements thereon, said value to be ascertained by appraisal * * *. In making said appraisal the value of the land for agricultural purposes shall be the basis of appraisal and the earning power of said land shall be a principal factor." It is claimed by defendants that Congress, recognizing the distress of mortgage debtors, granted to the plaintiff and other Federal Land Banks funds for the purpose of relieving such debtors and reestablishing the market value of farm lands; that by the distribution of bulletins reregarding features of the Federal Act mortgagors were induced to refinance their obligations; and that they now find

that on default their new creditor is much less lenient and more desirous to foreclose than had been the policy of the private lenders with whom they formerly dealt. Defendants do not claim that plaintiff made any false representations. Assuming their contentions to be true, it does not follow that there was an obligation imposed on the plaintiff to bid in the mortgaged property on the appraisal basis when there were no other bidders and there was no representation and we think no reason for defendants believing that plaintiff, in the event of foreclosure, would bid on the basis of the statutory appraisal.

The order appealed from is reversed.

All the Judges concur.