[File No. 6592.]

THE FIRST NATIONAL BANK OF WASECA, a Corporation, Appellant, v. WM. L. PAULSON, as Administrator with the Will Annexed of the Estate of A. P. Paulson, Deceased, Mildred Paulson, Thomas A. Paulson, William L. Paulson, Emma Elizabeth Olander, and All Persons Unknown Claiming Any Estate or Interest in or Lien or Encumbrance upon the Real Estate Described in the Complaint, Respondents.

(288 N. W. 465.)

Opinion filed November 3, 1939.

*Wm. R. Pearce* and *A. L. Stephan,* for appellant.

514

*Roy A. Ployhar,* for respondents.

CHRISTIANSON, J. This is an appeal by the plaintiff from an order of the district court of Stutsman county setting aside a mortgage foreclosure sale and ordering another sale.

The plaintiff is the owner of a mortgage on 480 acres of land in Stutsman county in this state. The mortgage was executed in October, 1934. Default was made in payment of the debt secured by the mortgage, and in January, 1938, the plaintiff instituted this action in the district court of Stutsman county to foreclose the mortgage. The defendants appeared and interposed an answer. Thereafter, on July 20th, 1938, the plaintiff and the defendants, through their respective attorneys, entered into a written stipulation whereby it was agreed that the defendants' answer should be withdrawn and that plaintiff might proceed to enter judgment; and that the attorney for the plaintiff would give the attorney for the defendants at least five days' notice in writing of the time of the sale of the premises and "at least five days' notice in writing of the time and place where plaintiff will apply to the above named court for a confirmation of said sale."

Thereafter plaintiff submitted proof, and the trial court found that there was due and owing to the plaintiff on the indebtedness secured by the mortgage the sum of $5,913.47; and the court directed judgment to be entered for the foreclosure of the mortgage and that "all and singular the mortgaged premises . . . or so much thereof as may be sufficient to raise the amount adjudged to be due . . . be sold, . . . That the Sheriff give public notice of the time and place of said sale, according to law . . . and that said Sheriff execute and deliver to the purchaser or purchasers at said sale the usual Sheriff's Certificate of Sale, as provided by law, . . . and that he make a report of his proceedings and file the same with the Clerk of this Court."

The sheriff caused notice of sale to be published. The notice stated that the sale would be held at 2 o'clock in the afternoon on October 24th, 1938. On October 7th, 1938, plaintiff's attorney served upon the attorneys for the defendants a notice, in accordance with the stipulation heretofore mentioned, to the effect that a sale of the premises described in the judgment in this action "will be held by the sheriff of Stutsman county, North Dakota, at the front door of the courthouse in the city of Jamestown, county of Stutsman and state of North Dakota, at the hour of 2 o'clock in the afternoon of Monday, the 24th day of October, 1938, and . . . that on the same day, to wit: the 24th day of October, 1938, at 3 o'clock in the afternoon of that day, the plaintiff will apply to the district court, county of Stutsman, state of North Dakota, at the chambers of said court in said courthouse, for an order confirming the sale to be so held as above set forth." The notice further recited that it was given pursuant to the stipulation between the parties dated July 20th, 1938.

The report of the sheriff shows that he first offered the land in forty acre tracts, then in eighty acre tracts, then in one hundred and sixty acre tracts, but received no bids; and that thereupon he offered the premises for sale as a whole and received a bid of $1,680 from the plaintiff for the premises as a whole, and that thereupon the premises were struck off and sold to the plaintiff who was the highest bidder. The report of the sheriff further shows that he executed and delivered to the purchaser the usual Certificate of Sale.

At the time of the sale there were outstanding taxes against the premises amounting to approximately $720.

At 3 o'clock in the afternoon on October 24th, 1938,—the same day on which the sale was had,—the plaintiff and defendants appeared before the trial court by their respective counsel, in accordance with the notice theretofore served upon defendants' counsel. The district judge who ordered the judgment of foreclosure presided at the hearing of the application to confirm the sale. The plaintiff presented to the court the sheriff's report of sale and asked for confirmation. The defendants filed written objections to the confirmation, and asked that the sale be set aside on the ground, among others, "that the amount bid by the plaintiff in this case, which according to the sheriff's report of sale is the sum of $1,680, is wholly inadequate and represents an unfair and

improper value to be placed upon the property sold, in that the property sold represents three quarter sections of land in the eastern part of Stutsman county which is worth at least the amount of the encumbrance against it."

After defendants had presented their objections to the confirmation of the sale, both parties produced witnesses who testified before the trial court. At the conclusion of the testimony, arguments were presented by counsel for the plaintiff and the defendants, respectively. Immediately following the arguments, the trial court said: "I feel that this sale should be set aside and a new sale ordered for the reason that the amount bid is unconscionable. . . . The court is not altogether unfamiliar with the matter of values—we have presided here in this county in the past year in 100 Federal Farm Loan mortgage foreclosures; we have presided here in the foreclosure of hundreds of other mortgages; and in no case in the court's memory has the sale bid been as low—some $1680 for three quarter sections of land lying within two miles of Barnes county, the best section and best part of Stutsman county in location. . . . In this case I have no hesitancy in setting it (the sale) aside as being unconscionable. . . ."

Later the trial court made and filed a written order adjudging that the sale be vacated and set aside and that a resale be made. In such order the court found as a fact that, on the day of the sale, the reasonable market value of the real property involved here was not less than $5,760, and that the amount bid by the plaintiff was "wholly inadequate and unconscionable." The plaintiff has appealed from such order, and contends:—

(1) That the price bid by the plaintiff was adequate;

(2) That mere inadequacy of price was not a sufficient ground for setting the sale aside and ordering a resale; and,

(3) That if § 3, chapter 161, Laws 1937 (which provides that "before granting an order confirming said sale, the court shall, if it appears upon due examination that the sale price is unreasonable and unfairly inadequate, or that justice has not otherwise been done, order a resale"), authorizes a court to order a resale on the sole ground of inadequacy of price, then such statute, as applied to mortgages executed before its enactment, operates to impair contract obligations in contra-

vention of § 16 of the Constitution of North Dakota, and of Article 1, § 10 of the Constitution of the United States.

These contentions will be considered in the order stated.

(1) The trial court is vested with wide discretionary powers in determining whether a sale under a decree of foreclosure shall be set aside. 35 C. J. 46, 47, 96; 42 C. J. 220, 230; 19 Standard Proc. 1036; Blossom v. Milwaukee & C. R. Co. 3 Wall. (U. S.) 196, 18 L. ed. 43. In this case the trial court was familiar with all the proceedings that had been had in the action prior to the entry of judgment. A hearing upon the report of the sale was had immediately following the sale. At such hearing the question was presented whether the sale should be confirmed, or set aside. The trial court heard the testimony of witnesses, who appeared in person, and testified as to the value of the land. In the circumstances the findings of the trial court come here, on this appeal, with all presumptions in favor of their correctness, "and with the burden resting upon the party alleging error of demonstrating error;" and that burden is not sustained unless it is shown that the findings are clearly opposed to the preponderance of the evidence. Jasper v. Hazen, 4 N. D. 1, 5, 58 N. W. 454, 23 L.R.A. 58; State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; Stavens v. National Elevator Co. 36 N. D. 9, 161 N. W. 558; Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 928, 194 N. W. 663. The findings in question here have substantial support in the evidence, and are not opposed to the preponderance of the evidence.

(2, 3) Appellant next contends that mere inadequacy of price is not a sufficient ground for setting aside a mortgage foreclosure sale and ordering a resale, as the right of redemption affords an adequate remedy for protection against a sacrifice of property for an inadequate price. In support of this contention appellant cites certain authorities, including the following decisions of this court: Power v. Larabee, 3 N. D. 502, 57 N. W. 789, 44 Am. St. Rep. 577; Grove v. Great Northern Loan Co. 17 N. D. 352, 116 N. W. 345, 138 Am. St. Rep. 707; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390; Bailey v. Hendrickson, 25 N. D. 500, 143 N. W. 134, Ann. Cas. 1915C, 739; Lunde v. Irish, 50 N. D. 312, 195 N. W. 825; St. Paul Trust & Sav. Bank v. Olson, 52 N. D. 315, 202 N. W. 472. In answer to appellant's contention, respondents assert that the sale in question here was subject to be set

aside under § 3, chapter 161, Laws 1937, which provides: "When any mortgage or other lien has been foreclosed by action, the court shall, on the coming in of the report of sale, on the request of any party who has been personally served with a summons or who has appeared, cause notice of hearing thereon to be served on the parties to the action, who have appeared, and fix the time and place for hearing on said report. Before granting an order confirming said sale, the court shall, if it appears upon due examination that the sale price is unreasonable and unfairly inadequate, or that justice has otherwise not been done, order a re-sale."

Appellant admits that chapter 161, supra, was intended to apply to mortgages that were executed before that act became effective; but it asserts that there was no intention to change the rule which, it is said, was announced in Power v. Larabee; and that said chapter 161 does not authorize the district court to set aside a mortgage foreclosure sale where the owner of the land has knowledge of the sale and an opportunity to redeem; that in such case the right of redemption is an adequate remedy; and that if chapter 161 is construed so as to change the rule and to authorize the district court to set aside a sale for inadequacy of price in a case where the owner of the land has knowledge of the sale and an opportunity to redeem, it operates to impair contract obligations of a mortgage which was executed prior to the time the statute became effective. It is the contention of the appellant that statements in the former decisions, to the effect that mere inadequacy of price is not a sufficient ground for setting aside a mortgage foreclosure sale where the owner has knowledge of the sale and an opportunity to redeem, and that in such case the right of redemption and the statutory method provided for the exercise of such right constitute adequate remedy, have become part of the contract obligation of mortgages upon real property in this state and that it was beyond the power of the legislature to change such rule as to then existing mortgages, as such change would impair the obligation of contracts.

Chapter 161, supra, by its terms, is made applicable to mortgages executed prior to the passage and approval thereof. And, in our opinion, the above quoted provision of § 3 of said chapter authorized the district court to set aside the mortgage foreclosure sale on the sole ground that the sale price was "unreasonable and unfairly inade-

quate;" but such authorization, and the order of the court, pursuant to the statute, ordering a resale, did not operate to impair the contract obligations of plaintiff's mortgage.

Both the Federal and the state Constitutions forbid the enactment of a state law impairing the obligations of contract. U. S. Const. Art. 1, § 10, U. S. C. A.; N. D. Const. § 16. Questions involving the meaning, scope and effect of the contract clause have been presented to the courts "with an uncounted variety and frequency." Story, Constitution, § 1375; Home Bldg. & L. Asso. v. Blaisdell, 290 U. S. 398, 429, 78 L. ed. 413, 424, 54 S. Ct. 231, 88 A.L.R. 1481. The decisions of the Supreme Court of the United States "put it beyond question that the prohibition (of the contract impairment clause in the Federal Constitution) is not an absolute one and is not to be read with literal exactness like a mathematical formula;" Home Bldg. & L. Asso. v. Blaisdell, supra, 290 U. S. 428, 78 L. ed. 423, 54 S. Ct. 231, 88 A.L.R. 1481; Story, Constitution, § 1378; that "in the nature of things" there is a distinction "between the obligation of a contract, and the remedy given by the legislature to enforce that obligation;" Sturges v. Crowninshield, 4 Wheat. (U. S.) 200, 4 L. ed. 550; Home Bldg. & L. Asso. v. Blaisdell, supra, 290 U. S. 430, 78 L. ed. 424, 54 S. Ct. 231, 88 A.L.R. 1481; that the states retain control over remedial processes, subject to the restriction that a statute affecting the remedy must not change the substantial rights of the parties under the contract, and thus in fact impair the obligations thereof (Sturges v. Crowninshield, 4 Wheat. (U. S.) 200, 4 L. ed. 530, supra; Ogden v. Saunders, 12 Wheat. (U. S.) 213, 6 L. ed. 606; Antoni v. Greenhow, 107 U. S. 769, 27 L. ed. 468, 2 S. Ct. 91; Penniman's Case (Vial v. Penniman) 103 U. S. 714, 26 L. ed. 602; Funkhouser v. J. B. Preston Co. 290 U. S. 163, 78 L. ed. 243, 54 S. Ct. 134; Waggoner v. Flack, 188 U. S. 595, 47 L. ed. 609, 23 S. Ct. 345; Home Bldg. & L. Asso. v. Blaisdell, 290 U. S. 398, 78 L. ed. 423, 54 S. Ct. 231, 88 A.L.R. 1481, supra; Richmond Mortg. & Loan Corp. v. Wachovia Bank & T. Co. 300 U. S. 124, 81 L. ed. 552, 57 S. Ct. 338, 108 A.L.R. 886; Honeyman v. Jacobs, 306 U. S. 539, 83 L. ed. 972, 59 S. Ct. 702; and that the states continue to possess power, "in relation to the operation of contracts" to "safeguard the vital interests of the people." Home Bldg. & L. Asso. v.

Blaisdell, 290 U. S. 398, 78 L. ed. 423, 54 S. Ct. 231, 88 A.L.R. 1481, supra.

The distinction between obligation and remedy was pointed out by Chief Justice Marshall. Said he:

"What is the obligation of a contract? and what will impair it? . . . A contract is an agreement in which a party undertakes to do, or not to do, a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. . . . Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct. . . ." Sturges v. Crowninshield, supra, 4 Wheat. (U. S.) 197, 200–201, 4 L. ed. 549, 550.

"We perceive, then, no reason for the opinion that the prohibition 'to pass any law impairing the obligation of contracts' is incompatible with the fair exercise of that discretion, which the state legislatures possess in common with all governments, to regulate the remedies afforded by their own courts. We think that obligation and remedy are distinguishable from each other. . . .

"That contracts derive their obligation from the act of the parties, not from the grant of government; and that the right of government to regulate the manner in which they shall be formed, or to prohibit such as may be against the policy of the state, is entirely consistent with their inviolability after they have been formed.

"That the obligation of a contract is not identified with the means which government may furnish to enforce it, and that a prohibition to pass any law impairing it does not imply a prohibition to vary the remedy; nor does a power to vary the remedy imply a power to impair the obligation derived from the act of the parties." Ogden v. Saunders, supra, 12 Wheat. (U. S.) 353, 354, 6 L. ed. 654, 655.

In Richmond Mortg. & Loan Corp. v. Wachovia Bank & T. Co. 300 U. S. 124, 81 L. ed. 552, 57 S. Ct. 338, 108 A.L.R. 886, supra, the court said: "The legislature may modify, limit or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right."

The statutory provision involved in this case is of such character

that ordinarily the legislative power is not restrained by the contract clause, and the presumption of constitutionality applies with unusual force. Not only does the statute relate to remedial processes, but it is an assertion by the state of its protective power to safeguard the vital interests of the people, for reasons which to the lawmakers seemed imperative (§ 1, chap. 161, supra), and which the Supreme Court of the United States has said justifies the exercise of such power. Home Bldg. & L. Asso. v. Blaisdell, 290 U. S. 398, 78 L. ed. 413, 54 S. Ct. 231, 88 A.L.R. 1481, supra.

As we see it, there was no impairment of any obligation of the contract; nor was there any abrogation of, or substantial change in, an existing remedy.

A contract is an agreement to do or not to do a certain thing. Comp. Laws 1913, § 5836; Ogden v. Saunders, 12 Wheat. (U. S.) 213, 6 L. ed. 606, supra. The obligation of a contract is "the law which binds the parties to perform their agreement." Home Bldg. & L. Asso. v. Blaisdell, 290 U. S. 398, 78 L. ed. 413, 54 S. Ct. 231, 88 A.L.R. 1481, supra. "By the 'obligation of a contract' is meant the legal obligation of parties to the agreement which at the time of contracting the law recognized and made enforceable. Ogden v. Saunders, supra." J. B. Preston Co. v. Funkhouser, 261 N. Y. 140, 184 N. E. 737, 87 A.L.R. 459.

The agreement to do or not to do in question here was evidenced by a note and a mortgage. The note bound the maker thereof to make the payments specified in the note, at the times specified. Payment of the sums specified at the times specified was the obligation of the contract evidenced by the note. Story, Constitution, § 1378; Sturges v. Crowninshield, 4 Wheat. (U. S.) 200, 4 L. ed. 550, supra. The mortgage is a contract by which the mortgagor hypothecated the real property described therein for the payment of the debt. Comp. Laws 1913, § 6725.

A mortgage "conveys no estate in the land of any degree or quality. It is a mere lien, given as security." McClory v. Ricks, 11 N. D. 38, 42, 43, 88 N. W. 1043; Nash v. Northwest Land Co. 15 N. D. 566, 571, 108 N. W. 792; 1 Jones, Mortgages, 8th ed. § 50; 3 Pomeroy, Equity Jurisprudence, 4th ed. § 1188.

Leaving on one side all question as to the right of the parties to so

contract, it is clear that the note and mortgage did not create any agreement between the contracting parties to the effect that in case the mortgagor made default, and the mortgagee or his successor in interest brought suit to foreclose, and obtained decree of foreclosure, and the premises were sold pursuant to such decree, that the court should not order a resale notwithstanding it were established to the satisfaction of the court that the sale price was "unreasonable and unfairly inadequate." J. B. Preston Co. v. Funkhouser, 261 N. Y. 140, 143, 184 N. E. 737, 738, 87 A.L.R. 459. The only inference reasonably to be drawn from their contract is that the parties contemplated that any foreclosure of the mortgage should be made in accordance with the procedure prescribed by law at the time of foreclosure (Scott & Wheeler v. District Ct. 15 N. D. 259, 267, 107 N. W. 61, 74; Conkey v. Hart, 14 N. Y. 22), and that the state might make such changes in such procedure as legislative judgment might dictate, subject to the limitation that there must be no impairment of the obligations of the contract— no impairment of the substantial rights of the parties or their successors in interest.

The only remedy for the enforcement of the mortgage provided by the laws in force when the mortgage was made was an action to foreclose. This is still the remedy. Such action invokes equity powers (3 Jones, Mortgages, 8th ed. § 1730; 3 Pomeroy, Equity Jurisprudence, 4th ed. p. 2817; 42 C. J. 19; Nash v. Northwest Land Co. 15 N. D. 569, 108 N. W. 792, supra; 19 Standard Proc. pp. 907, 909; 9 Enc. Pl. & Pr. 263), and must be brought in a district court, because the district courts are vested with exclusive original jurisdiction of all actions for the foreclosure of a real estate mortgage (N. D. Const. § 103; Meade v. First Nat. Bank, 24 N. D. 12, 138 N. W. 365); and "they have all the powers according to the usages of courts of . . . equity necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice and to carrying into effect their judgments, orders and other determinations." Comp. Laws 1913, § 7349.

Our statutes provide: "All sales of mortgaged premises under an order and decree of foreclosure must be made by a referee, sheriff or his deputy of the county or subdivision where the court in which the judgment is rendered is held, or other person appointed by the court for

that purpose, . . . and shall be made upon the like notice and in the same manner as provided by law for the sale of real property upon execution." Comp. Laws 1913, § 8105.

The jurisdiction of a court of equity to enforce its decrees is co-extensive with its jurisdiction to determine the rights of the parties to the controversy. 21 C. J. p. 693.

"Except in so far as its powers may be circumscribed by established equity practice or statute, the method of enforcing its decrees rests largely in the discretion of the court; and the court, being clothed with the inherent power to control its own process, may so direct the execution of the decree that no injustice will be done and no abuse thereof will be perpetrated." 21 C. J. p. 693.

A sale under a decree of foreclosure is, in contemplation of law, the act of the court, and "the marshal, sheriff, commissioner, or such other officer as may be appointed to conduct it is the mere agent of the court in executing its will." 42 C. J. p. 181; 35 C. J. p. 8; Wiltsie, Mortgage Foreclosure, § 469.

Courts of equity have a general supervision over judicial sales made under their decrees and may set aside or vacate sales for cause. 35 C. J. 95; 42 C. J. p. 230, § 1870; Rorer, Judicial Sales, § 545. Such supervision will be exercised with the end in view that no injustice shall be done to any of the parties, and that the property shall be so sold as may best conduce to that end. 19 R. C. L. pp. 574, 575. See also State ex rel. Kunz v. Campbell, 5 S. D. 636, 60 N. W. 32; Goodell v. Harrington, 76 N. Y. 547; Hale v. Clauson, 60 N. Y. 339; Michigan Trust Co. v. Cody, 264 Mich. 258, 249 N. W. 844; Suring State Bank v. Giese, 210 Wis. 489, 246 N. W. 556, 85 A.L.R. 1477. Before confirmation, a judicial sale may be vacated on motion made in the original cause. 35 C. J. 108. Many courts, including the Supreme Court of the United States, have held that inadequacy of price, so gross as to shock the conscience of the court, is a sufficient ground for setting aside a sale under a decree of foreclosure, where timely attack is made. Ballentyne v. Smith, 205 U. S. 285, 51 L. ed. 803, 27 S. Ct. 527; Federal Title & Mortg. Guaranty Co. v. Lowenstein, 113 N. J. Eq. 200, 166 A. 538, 541; Home Bldg. & L. Asso. v. Blaisdell, 290 U. S. 398, 78 L. ed. 413, 54 S. Ct. 231, 88 A.L.R. 1481; Richmond Mortg. & Loan Corp. v. Wachovia Bank & T. Co. 300 U. S. 124, 81 L. ed.

552, 57 S. Ct. 338, 108 A.L.R. 886; Honeyman v. Jacobs, 306 U. S. 539, 83 L. ed. 972, 59 S. Ct. 702; Suring State Bank v. Giese, 210 Wis. 489, 246 N. W. 556, 85 A.L.R. 1477, and State ex rel. Kunz v. Campbell, 5 S. D. 636, 60 N. W. 32, supra; Peoples-Pittsburgh Trust Co. v. Blickle, 330 Pa. 398, 199 A. 213, and cases cited in note on page 214.

In Ballentyne v. Smith, 205 U. S. 285, 51 L. ed. 803, 27 S. Ct. 527, supra, the court held that, prior to confirmation, the trial court might "set aside a foreclosure sale of mortgaged property upon the single ground of inadequacy of price."

In Home Bldg. & L. Asso. v. Blaisdell, supra, the court said: "In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages . . . to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience." 290 U. S. 446, 78 L. ed. 433, 54 S. Ct. 231, 88 A.L.R. 1481.

In Honeyman v. Jacobs, 306 U. S. 539, 83 L. ed. 972, 59 S. Ct. 702, supra, the court said that refusal to confirm a sale under a decree of foreclosure, where the sale is "found to be unfair or the price bid was inadequate" is only the "normal exercise" of the "appropriate equitable powers" of the court.

The former decisions of this court, upon which appellant relies, did not result in any "settled judicial determination" that a sale under a decree of foreclosure may not be set aside, in any case, on the single ground of gross inadequacy of price. In so far as those decisions dealt with the question of inadequacy of price as a ground for setting aside an execution or foreclosure sale they did not involve the construction of any law relating to the setting aside of such sales, but were expressions of views, based upon the decisions of courts of other jurisdictions and upon legal treatises, "as to the customary or common law" on the subject, in absence of legislation. The views expressed in those decisions rested largely, if not wholly, upon the proposition that the right of redemption created by our statutes ordinarily gave the owner an adequate remedy against mere inadequacy of price, where the owner had knowledge of the sale and an opportunity to redeem. Warren v. Stinson, 6 N. D. 293, 298, 302, 70 N. W. 279. There was no holding, and no suggestion, in those decisions that there was any lack of power

in the district court to set aside a sale upon motion timely made. On the contrary, those decisions in no uncertain terms recognized that a district court has inherent power to entertain a motion to set aside a sale made pursuant to a decree of foreclosure, and that on such motion inadequacy of price is a material fact for consideration.

The statutory provision in question here did not confer upon the district court any new power. That court always had power to entertain a timely motion to set aside a sale made under a decree of foreclosure and it had power, and it was its duty, to grant such motion where the ends of justice would be best subserved thereby. In the former decisions of this court, the view was expressed that where a motion to set aside a sale is made on the sole ground of inadequacy of price, the right of redemption will furnish an adequate and complete remedy against the sacrifice of the property, where the owner had knowledge of the sale and an opportunity to redeem.

Those decisions did not deny the power of the district court to consider or to grant the motion to set aside the sale on the ground of inadequacy of price in a case where the owner's property would be sacrificed if the sale were not set aside. They merely held that a sale will not be set aside for mere inadequacy of price in a case where the right of redemption furnishes to the owner an adequate remedy "against the injustice of the sacrifice of his property," but they limited the application of the holding to cases where the remedy furnished by the right of redemption was adequate. In Warren v. Stinson, supra, the court, by way of explanation of the rule announced in Power v. Larabee, 3 N. D. 502, 57 N. W. 789, 44 Am. St. Rep. 577, supra, said: "In that case we expressly qualified the rule that the right of redemption was a sufficient answer to a proceeding to set aside an execution sale for inadequacy of price by the statement that it applied to cases where the owner of the property had knowledge of the sale in time to redeem . . . that very slight circumstances justify the setting aside of an execution sale for inadequacy of price in cases where no question of an innocent purchaser is involved is well settled."

In St. Paul Trust & Sav. Bank v. Olson, 52 N. D. 315, 202 N. W. 472, supra, the court said: "Generally, the rule is well established that mere inadequacy of price will not, in the absence of exceptional

circumstances, warrant the setting aside of an execution sale. This court has heretofore held to the same effect."

Chapter 161, Laws 1937, bears unmistakable evidence that the lawmakers had become convinced that under then prevailing economic conditions the statutory right of redemption did not afford an adequate remedy against the sacrifice of property for inadequacy of price in all cases,—even where the owner had knowledge of the sale and an opportunity to redeem. The legislative enactments in other states show that there too the lawmakers had reached the conclusion that remedial legislation must be enacted to protect the owner against the sacrifice of his property through inadequacy of price at foreclosure sale. While the enactments in the several states differed, the general purpose was the same, and all recognized that the right of the owner to make payment of his debt before sale, or to redeem from the sale, did not furnish adequate protection against such sacrifice. Some of the enactments in other states were far more drastic in their provisions, from the standpoint of the mortgagee, than the one under consideration here. See N. C. Laws 1933, chap. 275; Richmond Mortg. & Loan Corp. v. Wachovia Bank & T. Co. 300 U. S. 124, 81 L. ed. 552, 57 S. Ct. 338, 108 A.L.R. 886, supra; N. Y. Laws 1933, chap. 794; Honeyman v. Jacobs, 306 U. S. 539, 83 L. ed. 972, 59 S. Ct. 702, supra; Minn. Laws 1933, chap. 44; State ex rel. Lichtscheidl v. Moeller, 189 Minn. 412, 249 N. W. 330; Minn. Laws 1933, chap. 339; Home Bldg. & L. Asso. v. Blaisdell, 290 U. S. 398, 78 L. ed. 413, 54 S. Ct. 231, 88 A.L.R. 1481, supra; Iowa Laws 1933, chap. 182; Craig v. Waggoner, 218 Iowa, 876, 256 N. W. 285; Iowa Laws 1933, chap. 179; Des Moines Joint Stock Land Bank v. Nordholm, 217 Iowa, 1319, 253 N. W. 701.

The lawmakers of North Dakota—being convinced that a "public emergency" existed (§ 1) which required that the police power be put forth to safeguard the vital interests of the people, and that an orderly and expeditious administration of justice required that the courts exercise their normal and appropriate equitable powers as regards the supervision of judicial sales,—provided that where a sale has been made under a decree of foreclosure the court, "on the request of any party who has been personally served with a summons or who has appeared," shall cause notice of hearing on the report of sale to be given, and that if on such hearing "it appears upon due examination that the sale price

is unreasonable and unfairly inadequate, or that justice has otherwise not been done," the sale shall not be confirmed, but a 'resale ordered. Id. § 3.

This statutory provision did not confer any new power, or enlarge any existing power of the court. It merely recognized the existence of "appropriate equitable powers," and "assured to the court the exercise" of such powers of supervision and control over sales made under its decrees. Honeyman v. Jacobs, 306 U. S. 539, 83 L. ed. 972, 59 S. Ct. 702, supra. In absence of the statute, the court would have had power to hear and determine a motion to set aside a sale, "before granting an order" of confirmation. In absence of the statute, the court would have had power to set aside a sale, where the refusal to do so would have resulted in injustice.

The statute does not authorize that a sale be set aside in any case, except after "due examination," and then only "if it appears that the sale price is unreasonable and unfairly inadequate, or that justice has otherwise not been done." In other words, the sale is to be set aside only when the facts and circumstances disclosed "upon due examination" are such as to shock the conscience of the court. It is not enough that the sale price be inadequate, it must be "unreasonable and unfairly inadequate" in order to justify or require the ordering of a resale. Obviously, the question whether a sale price in any case is or is not "unreasonable and unfairly inadequate" is not merely a matter of arithmetic. A determination of the question involves a consideration of all the facts and circumstances, and the result of the sale so far as the parties are concerned.

The condition confronting the court at the time it made the order appealed from was this: There was due on the judgment, with interest to the date of sale, the sum of $5,932.88. The costs and disbursements incident to the sale amounted to $27.55. The land had been sold for $1,680. After applying the proceeds of sale there remained a deficiency of $4,280.43. The court found that the land was worth at least $5,760. After making allowance for the outstanding taxes amounting to $720, plaintiff's bid for the land was $3,180 less than the minimum value as found by the court. The trial court held that in the circumstances the sale price was "unconscionable"—that is, that the inadequacy of price was so gross as to shock the court's conscience,

and that consequently the court would not confirm the sale but order a resale.

In the order appealed from the court provided that no costs should be allowed to either party upon the hearing which resulted in the order. The costs of the sale and of the resale will, of course, be retained by the sheriff out of the proceeds of the sale, in accordance with the provisions of the decree. If, upon the resale, the premises are sold for a sufficient sum to pay plaintiff's claim in full together with all costs, the claim and costs will be so paid from the proceeds of the sale. If the sale price is less than plaintiff's claim and the costs of the sale, the plaintiff will receive the proceeds of the sale, remaining after the deduction by the sheriff of the costs and disbursements of the sale, and the sheriff's report will show the amount of the deficiency.

The sheriff's report of the sale in question here shows that the total amount of costs and disbursements incident to the sale aggregated $27.55. Obviously, the expense incident to a resale cannot exceed this amount very much, if at all. The court did not stay or postpone the resale. The order proceeds upon the theory that the resale shall be made without delay. Under the terms of the statute relative to sales of real property, pursuant to a decree in a foreclosure action, adequate notice could have been published, and a resale held within a period of not to exceed six weeks after the order appealed from was made. Comp. Laws 1913, § 8105. So, the actual result of the order appealed from was that the court rejected plaintiff's bid and directed that another sale be held forthwith. So far as concerns expense and delay, the cost of a resale probably would not exceed $30, and if the order had been complied with the new sale could have been held within six weeks.

There were no buildings on the land. About 370 acres were under cultivation, and the remainder was "pasture and hay land." The sale was held on October 24th—after the cropping season had ended. In the very nature of things there could be little difference in the value of ownership of this land and the right to occupy it that would commence on October 24th, 1939, and the value of ownership and the right to occupy that would commence six weeks later.

The situation resulting from entry of the order was not at all unlike that which would have resulted if the sale had been postponed under

the provisions of § 7748, Comp. Laws 1913. This section reads: "When there are no bidders or when the amount offered is grossly inadequate, or when from any cause the sale of any real or personal property upon execution or upon the foreclosure of a mortgage or other lien is prevented from taking place on the day fixed, the sheriff, or person making the same, may postpone the sale for not more than three days without being required to give any further notice thereof, but he shall not make more than two such postponements and such postponements must be publicly announced when and where the sale should have taken place. Such sale may be postponed for a longer period than three days by continuing the publication of the original notice of sale together with notice of such postponement, specifying the time and place at which such postponed sale will be made." Comp. Laws 1913, § 7748.

The statutory provision under consideration here does little more than authorize the court to refuse to confirm a sale and to order a resale in circumstances under which the sheriff, or person conducting the sale, might have postponed it under § 7748, supra. In case of postponement of the sale and the publication of the original notice of sale together with notice of postponement, the cost incident to postponement, in all probability, would not have been much, if any, less than the cost of a resale.

Whether a sale shall be set aside, either before or after confirmation is a matter resting largely in the judicial discretion of the trial court. 35 C. J. 46, 47, 96; 42 C. J. 220, 230; Blossom v. Milwaukee & C. R. Co. 3 Wall. (U. S.) 196, 18 L. ed. 43. Such discretion will be exercised more freely before than after confirmation of the sale. 35 C. J. 96, 97; Bailey v. Hendrickson, 25 N. D. 500, 518, 143 N. W. 134, 141, Ann. Cas. 1915C, 739.

It is the trial court—not the appellate court—that is charged with the duty of supervising the sale. It is the trial court that is vested with discretionary powers in determining whether the sale shall be confirmed, and where a sale has been confirmed whether, notwithstanding such confirmation, it shall be vacated. The great question, on the merits of the appeal, is whether the trial court acted arbitrarily and capriciously, and thus plainly abused its discretion. 35 C. J. 220, 230.

"The ultimate test always is whether or not the action of the court in setting aside the sale was a gross abuse of discretion." Delaware County Nat. Bank v. Miller, 303 Pa. 1, 6, 154 A. 19, 21. If there were no abuse of discretion, the order must stand.

In this case the trial court said that the proposed sale price was "wholly inadequate and unconscionable," and that consequently he would not confirm the sale, but would order a resale. The court heard witnesses, and made "due examination" into the merits of the question. There was a full and fair hearing. The decision was made after a consideration of all the facts and circumstances. No one doubts that the trial court meant what he said. It was his deliberate and impartial judgment that an injustice would be done if the sale were confirmed, and that the ends of justice would be best subserved by setting the sale aside, and holding another sale.

It is difficult to see how it can be seriously contended that the action of the trial court resulted in any denial of, or interference with, any substantial right of the plaintiff, or that such action constituted an abuse of judicial discretion. It cannot be said "that a chancellor grossly abused his discretion by refusing to do that which would have shocked his conscience." 303 Pa. 1, 6, 154 A. 19, 21.

The order appealed from is affirmed.

Morris and Burke, JJ., concur.

Nuessle, Ch. J. (dissenting). I cannot agree with the conclusion reached in the foregoing opinion, nor subscribe to all that is said in reaching that conclusion.

The facts speak loudly for themselves. In October, 1934, the mortgagor borrowed $5,000. He contracted to repay that money with interest as the same should fall due. To insure this repayment he also contracted that the lender might sell certain of the borrower's land if the money were not otherwise forthcoming and apply the proceeds on the debt. He further contracted that so long as the loan was unpaid he would pay the taxes on this land as the same accrued. He did not pay the principal when the same was declared due, as it might be under the terms of the contract. He did not pay the interest on the loan—

more than $900 was owing at the time of the sale. He did not pay the taxes as they accrued—they amounted to $720. So the land was sold as he had contracted it might be. All the requirements of the law were followed in making the sale. There is no reason to infer that it was not fairly made. It was pursuant to an order of the court. It was held at the time and place appointed. Due notice was given and it was made to the highest bidder. There were no exceptional circumstances—no inclement weather, no untoward happening, no act on the part of the mortgagee—to hinder. But the mortgagor was dissatisfied and asked that the sale be set aside because the amount bid and paid was inadequate, although he was not hurt thereby since he could redeem within one year by paying the sales price with interest. So it was set aside and a new sale was ordered, albeit there was no assurance that more could be realized at a subsequent sale. In the meantime, interest and taxes were accumulating at the rate of more than $500 a year. And, in the meantime, the mortgagor had the use of and profits from the land. Thus, though the mortgagee was not at all at fault, he had to pay the expenses of the first sale and was delayed in realizing on his security. And thus, the mortgagor was enable to defer the payments of his debt indefinitely and to longer enjoy the use of the property without any increased burden to himself, all wholly at the expense of the mortgagee. The land was sold for $1,680, and the accrued taxes were $720, making a total of $2,400, almost half of the original debt, and five twelfths of the value of the land as found by the court. Of course, when the transaction originated, the mortgagee made only a loan and not a contract to buy the land at the market price. And few borrowers are able to borrow up to the full value of the security pledged. So clearly, considering all the circumstances, the mortgagee's contract rights were impaired contrary to the provisions of both the Constitution of the United States and of the Constitution of the state of North Dakota. True, this was done pursuant to the statute, which it is claimed deals only with the matter of remedy. But even if this be so, since it defeats the mortgagee's contract rights it does not make the statute or acts done under it immune to constitutional challenge. And even though "the states continue to possess power 'in relation to the operation of contracts' to 'safeguard the vital interests of the people'" nevertheless they may not exercise this power to the extent of impair-

ing substantial contract rights of individual citizens without due compensation any more than they may, for the same reason, take or damage their other property.

BURR, J., concurs.